## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ANAJE BOYD** | ) | |
| **1601 Ralworth Road** | ) | |
| **Baltimore, MD 21218** | ) | **Civil Case No._____** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA,** | ) | |
| | ) | |
| <u>Serve:</u> | ) | |
| **Muriel Bowser, Mayor,** | ) | |
| **1350 Pennsylvania Avenue, NW,** | ) | |
| **Washington, DC 20004** | ) | |
| | ) | |
| <u>Serve:</u> | ) | |
| **Attorney General Karl Racine** | ) | |
| **441 4th Street NW, Suite 600 South** | ) | |
| **Washington, DC 20001** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA FIRE AND** | ) | |
| **EMERGENCY MEDICAL SERVICES** | ) | |
| **DEPARTMENT** | ) | |
| | ) | |
| <u>Serve:</u> | ) | |
| **John A. Donnelly, Sr., Chief** | ) | |
| **2000 14th Street, NW,** | ) | |
| **Washington, DC 20009** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT FOR DECLARATORY AND MONETARY RELIEF
## AND DEMAND FOR JURY TRIAL

Plaintiff Anaje Boyd, by and through her undersigned counsel, hereby files this action for

equitable and monetary relief against Defendant District of Columbia, District of Columbia Fire and

Emergency Medical Services (hereinafter "Defendant DC FEMS", "Defendant", or "DC FEMS") for

1

harassment based on sex and for retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 and §2-1402.61 *et seq*.

Defendant subjected Plaintiff, a firefighter and emergency medical technician, to sexual harassment when her supervisor forcibly sexually assaulted her while she was on duty, reaching his hand into her bra grabbing her breast, and placing money in her bra before casually walking away. Defendant both failed to prevent this assault from occurring and subsequently failed to take prompt or effective corrective action, instead appearing to condone the assault and fostering an environment where sexual harassment was prevalent.  Defendant further sought to silence Plaintiff and thwart her efforts to pursue her claims of harassment by repeatedly and erroneously informing her that she could not file a complaint of discrimination or harassment because a criminal investigation against the harassing supervisor was pending.

## INTRODUCTION AND SUMMARY

1.  Plaintiff Anaje Boyd is a firefighter and an emergency medical technician employed by Defendant DC FEMS.  She has worked for Defendant since October 12, 2011.

2.  On April 25, 2020, Ms. Boyd was asleep in the fire station while she was working a night shift, and, when she awoke, Lieutenant ("Lt.") Antwan Jordan, her supervisor at that time, was standing over her. He told her that she could leave work and whispered into her ear "with your sexy ass." He then reached his hand into Ms. Boyd's shirt and grabbed her right breast. Ms. Boyd tried to remove Lt. Jordan's hand, but he grabbed her right breast tighter and tried to grab her left breast as well. Once Lt. Jordan removed his hand from Ms. Boyd's shirt he said, "let me get out of here." Once Ms. Boyd left the fire station, she realized that Lt. Jordan placed forty dollars in her bra.

3.   The next day, on April 26, 2020, Ms. Boyd reported the sexual harassment to
     management, and in response, management advised her that she could take two days of
     leave. Thereafter, for nearly one month, she was required to report to work while Lt.
     Jordan was still in the workplace at the same time as her.

4.   Following the assault, on multiple occasions, Ms. Boyd reported the harassment to the DC
     FEMS Chief of Staff, a Captain and Investigator in the Office of Internal Affairs, and a
     lieutenant, in an attempt to pursue her claim of harassment and request information about
     her rights and DC FEMS' obligations.  In response, DC FEMS officials repeatedly advised
     her that DC FEMS could not investigate her report of sexual harassment, and that she
     could not file an EEO complaint, because there was a pending criminal investigation
     following Ms. Boyd's criminal report.

5.   On June 27, 2022, Lt. Jordan was convicted of sex abuse in the District of Columbia
     Superior Court and sentenced to 120 days of incarceration. The execution of the sentence
     was suspended, and the court ordered a $50 fee and that Lt. Jordan be under supervised
     probation for 12 months.

6.   This Complaint challenges the unlawful sexual harassment against Plaintiff Anaje Boyd
     (Ms. Boyd) by Lt. Jordan on April 25, 2020, and subsequent retaliation by DC FEMS
     officials, who impeded Ms. Boyd's ability to file an EEO complaint and failed to exercise
     reasonable care to prevent and correct promptly the harassment, in violation of Title VII of
     the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the District of
     Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq.*

7.   As a direct and proximate cause of Lt. Jordan's harassment, Ms. Boyd has suffered severe
     mental and emotional distress. In addition, as a direct and proximate cause of Lt. Jordan's

harassment, Ms. Boyd no longer works night shifts, therefore losing overtime pay, for which she seeks compensation herein. Further, in an effort to recoup some of the lost overtime pay, she takes additional day shifts at times, forcing her to pay for childcare because no family members are available during the daytime for childcare purposes. She also seeks compensatory relief in an amount not less than $300,000 and for an appropriate ORDER granting the relief sought herein.

## **JURISDICTION**

8.  This Court maintains subject matter jurisdiction over Ms. Boyd's claims pursuant to 28 U.S.C. § 1331, and 1343(a)(3) because her claims arise under the laws of the United States, specifically Title VII.

9.  This Court enjoys supplemental jurisdiction over all Plaintiff's claims pursuant to the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq.* because those claims are part of the same case or controversy as those arising under Title VII.

## **VENUE**

10. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e-16(c).

11. Venue lies in this Court pursuant to 28 U.S.C. Sec. 1391(b)(1) and (2). Venue is proper in this Court because Defendant operates in the District of Columbia and all acts and omissions in controversy took place in the District of Columbia.

## **PARTIES**

12. Plaintiff Anaje Boyd (hereinafter "Ms. Boyd") is an adult resident of Maryland, who at the time of the events in this Complaint lived in Maryland and worked for Defendant in Washington D.C. as a female firefighter.

13. At all times material to this Complaint, Ms. Boyd was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e(f) and D.C. Code 2-1401.02(9)(A).

14. Defendant District of Columbia, a municipal government, operates DC FEMS within the District of Columbia.

15. DC FEMS is an "Employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b) and D.C. Code 2-1401.02(10).

## **FACTUAL BACKGROUND**

16. DC FEMS hired Ms. Anaje Boyd as a firefighter and emergency medical technician in 2011. Ms. Boyd loved her job, had a positive relationship with coworkers, and for more than ten years of service, has fought multiple fires and arrived at the scene of over 1,000 emergency sites.

17. Upon information and belief, between approximately April 2020 and July 2022, Ms. Amy C. Mauro, was the Chief of Staff of DC FEMS. Ms. Mauro is a barred attorney.

18. Upon information and belief, in or around April 2020, Ms. Mauro was the acting Equal Employment Opportunity (EEO) representative.

19. Upon information and belief, between approximately April 2020 and July 2022, Captain Melanie Barnes was an investigator in the Office of Internal Affairs of DC FEMS.

20. At all relevant times, Ms. Boyd's performance was excellent. Her duties included providing life saving measures and extinguishing fires. Ms. Boyd's work schedule was 24 hours on the job, followed by 72 hours off the job.

21. During the relevant time, Ms. Boyd was assigned to Engine Company 28 and Truck Company 14.

22. On April 25, 2020, Lt. Jordan was Ms. Boyd's first line supervisor at Engine Company 14, a station she was not assigned to, while Ms. Boyd completed her overtime and overnight shift.

23. DC FEMS was aware that Lt. Jordan had a history of engaging in sexually inappropriate and harassing behavior.  For example, DC FEMS was aware that in 2015, Lt. Jordan was charged with misdemeanor sexual abuse for inappropriate touching of a female outside the firehouse where he was stationed.

24. Another female firefighter, Tekiva [Last Unknown], told Ms. Boyd that Lt. Jordan inappropriately touched her prior to the April 25, 2020 incident, made her feel uncomfortable, and came to her fire station to harass her on his days off. Ms. Tekiva told Ms. Boyd that the harassment became so unbearable that she complained about Lt. Jordan's inappropriate conduct to her supervisor.  Although her supervisor told Lt. Jordan to leave that fire station, upon information and belief, no further action was taken to prevent Lt. Jordan's well-known and prevalent sexual harassment.

25. After the assault, another female fire fighter also told Ms. Boyd that Lt. Jordan "has always been a creep."

26. DC FEMS did not take prompt and effective action to ensure that Lt. Jordan did not continue to engage in harassing behavior.

27. Instead, throughout Ms. Boyd's employment, Defendant fostered an environment where inappropriate, sex-based comments were common, including discussions of Ms. Boyd's sexual orientation.

28. On April 25, 2020, during a night shift, Ms. Boyd was asleep in the bunk room of Engine 14. She felt a presence near her, and, when she opened her eyes, she found Lt. Jordan standing over her.

29. Lt. Jordan informed her that she had just been relieved of duty and that her Officer in Command ("OIC") was looking for her. Lt. Jordan then proceeded to lean in close to Ms. Boyd and whisper in her ear, "with your sexy ass."

30. Ms. Boyd immediately felt uncomfortable and waited for Lt. Jordan to exit the bunk room. He initially left the bunk room but immediately returned asked Ms. Boyd if she left anything on the ambulance. She stated that she left her go-bag.

31. In response, Lt. Jordan walked up to her and said, "so you didn't leave this?" and forcibly put his hand down Ms. Boyd's shirt into her bra and squeezed her right breast. Ms. Boyd grabbed his hand and tried to remove it from her breast but he refused to move it.  Instead, he attempted to grab her left breast.  He then whispered, "let me get out of here" and walked back out of the bunkroom for the second time.

32. Ms. Boyd was shaken by the assault.  She gathered all her belongings and left the firehouse.

33. Shortly after the incident with Lt. Jordan, Ms. Boyd was sitting in the parking lot and felt something in her bra. When she reached down into her bra, she discovered two twenty-dollar bills.

34. After this traumatic incident, Ms. Boyd drove to the Engine Company 28 . When Ms. Boyd arrived at the firehouse, she sent Lt. Jordan a text expressing that his actions were disrespectful and left her feeling violated.

35. On April 26, 2020, a day later, Ms. Boyd reported to Lt. Martin McMahon, Ms. Boyd's general supervisor, that Lt. Jordan sexually harassed her. She also told Lt. McMahon that she wished to file an EEO complaint.

36. In response, Lt. McMahon told Ms. Boyd that he was going to contact the EEO Office.

37. On April 27, 2020, two days after Lt. Jordan sexually harassed Ms. Boyd, Ms. Boyd filed a police report against Lt. Jordan with the Metropolitan Police Department. The report stated: "R1 reported while inside the bunk room at the listed location S1 placed his hand inside of R1's shirt and grabbed R1's right breast. R1 attempted to pull away from S1 however, S1 continued to grab onto R1's breast."

38. Lt. McMahon advised Ms. Boyd that after he attempted to contact the EEO office, he was instructed by Chief [First Name Unkown] Simister to contact Amy Mauro.

39. Lt. McMahon then advised Ms. Boyd that Ms. Mauro was the Acting EEO officer.

40. Lt. McMahon advised Ms. Boyd that she should contact Ms. Mauro because the previous Acting EEO officer had resigned.

41. As a result of Lt. McMahon's representations and instructions, on or around April 27, 2020, Ms. Boyd emailed Ms. Mauro.

42. While Ms. Boyd spoke with Ms. Mauro about her complaint of sexual harassment and assault, and after Ms. Boyd told Ms. Mauro that she had already filed a police report, Ms. Mauro appeared irritated based on her tone, which was aggressive and curt.

43. At no point during the conversation did Ms. Mauro ever inform Ms. Boyd that she was not an EEO counselor.

44. At no point during the conversation did Ms. Mauro notify Ms. Boyd of any other process or procedure for reporting harassment.

45. During the conversation, Ms. Mauro affirmatively misled and improperly advised Ms. Boyd that she could not pursue an EEO complaint.

46. Specifically, Ms. Mauro stated that because Ms. Boyd reported the assault to Metropolitan Police Department (MPD), she must "wait" and that there could not be an investigation into her harassment complaint while the criminal process was ongoing.

47. Ms. Boyd relied on this misleading assertion by Ms. Mauro and therefore did not pursue a complaint of harassment at the time.

48. In addition to sharing the harassment and assault with Ms. Mauro, Ms. Boyd also informed her that, as a result of being sexually assaulted and groped in the workplace, she was experiencing significant distress and needed leave.

49. Ms. Boyd also feared for her physical safety if she returned to the workplace, as she was aware that Lt. Jordan remained on duty.

50. At 10:15 a.m. on May 4, 2020, Ms. Boyd emailed Ms. Mauro and asked Ms. Mauro about her leave options.

51. Ms. Mauro approved Ms. Boyd's request for leave for only the next two tours of duty.

52. Ms. Mauro's decision to give Ms. Boyd only two days off was detrimental to Ms. Boyd's mental health, as she feared for her physical safety given the sexual assault she experienced in the workplace.

53. Upon information and belief, at the time of Ms. Boyd's communications with Ms. Mauro regarding leave, Lt. Jordan continued to work regular shifts.

54. Upon information and belief, before requiring Ms. Boyd to return to the workplace, Defendant took no action to ensure that Lt. Jordan did not have any contact with Ms. Boyd or to ensure the two were separated.

55. Upon information and belief, at no point did Defendant ever take appropriate action to ensure that Lt. Jordan would have no contact with Ms. Boyd.

56. Ms. Boyd was not comfortable returning to the workplace, but she had no choice given that DC FEMS had not approved any additional leave or suggested to her that she had the option of requesting additional leave.

57. On or around May 22, 2020, Ms. Mauro told Ms. Boyd that Lt. Jordan had turned himself in to the police.

58. Due to Lt. Jordan turning himself in, and not because of Ms. Boyd's internal complaint, DC FEMS placed Lt. Jordan on an administrative detail.

59. Because DC FEMS failed to exercise reasonable care to prevent and correct promptly the harassment, Ms. Boyd constantly feared that she would run into Lt. Jordan while on duty.

60. Specifically, after Ms. Boyd reported the April 25, 2020 incident, management waited approximately a month to advise Ms. Boyd that Lt. Jordan was removed from the workplace.

61. On August 9, 2021, while attending a refresher class at the Training Academy, Ms. Boyd ran into Lt. Jordan, despite Lt. Jordan not being required to take the class. Ms. Boyd immediately began to experience flashbacks to the assault and fear for her physical safety.

62. In or around 2021, Ms. Boyd learned that DC FEMS employees were discussing her complaint of sexual harassment and assault. Ms. Boyd's coworker, Robert Lowery, told Ms. Boyd that "rumor ha[d] it" Lt. Jordan touched her. Ms. Boyd asked how he knew this information, and he told Ms. Boyd, "everyone's talking about it."

63. In or around July 2021, while Ms. Boyd discussed with Mr. Lowery the harassment she suffered by Lt. Jordan, Mr. Lowery suggested Ms. Boyd reach out to Joshua Taborn,

another DC FEMS employee that filed a civil suit for harassment against DC FEMS, in an effort to learn how to initiate the EEO process.

64. In or around July 2021, Mr. Taborn suggested to Ms. Boyd that she speak to Captain (Cpt.) Melonie Barnes, DC FEMS Investigator in the Office of Internal Affairs, regarding her sexual assault complaint given that Ms. Boyd had not heard anything from DC FEMS regarding her complaint to Ms. Mauro.

65. On July 1, 2021, Ms. Boyd emailed Cpt. Melonie Barnes, with the subject, "Sexual assault matter," and stated, "Hello My name is Anaje Boyd I'm assigned at E-28-4. Last year I made a sexual assault case against a member on the department, and I wasn't instructed on the proper ways to go about it. I was informed you were a good source to reach out to."

66. On or about July 1, 2021, Ms. Barnes called Ms. Boyd, and Ms. Boyd told Ms. Barnes that she had been sexually assaulted and filed a complaint with Ms. Mauro, who, she had been advised, was an EEO counselor.

67. Ms. Barnes told Ms. Boyd that she was going to look into the status of Ms. Boyd's complaint.

68. Ms. Barnes also told Ms. Boyd that she did not have to email her, but could call her instead.

69. Ms. Barnes did not provide any substantive guidance during the phone call or suggest that Ms. Boyd should take any other action.

70. On July 26, 2021, knowing that Ms. Boyd had filed a criminal report against Lt. Jordan and had a related upcoming court appearance, Ms. Barnes sent Ms. Boyd a text message saying, in part, "Call me when you finish court to give me an update please."

71. On July 27, 2021, Ms. Boyd responded to Ms. Barnes message saying, "Hi I just spoke with the prosecutor. We're going to trial." A few hours later, Ms. Barnes responded, seemingly to check the status of Ms. Boyd's criminal case against Lt. Jordan, saying, in part, "Very good. I have the court date. Please keep me posted with any additional information."

72. Upon information and belief, as Ms. Barnes checked in on the status of Ms. Boyd's criminal court case, DC FEMS management took no action to address Lt. Jordan's sexually harassing conduct.

73. On August 6, 2021, at 2:14 p.m., Ms. Boyd emailed Cpt. Barnes again and stated, "Good afternoon Mrs. Barnes. I'm following up about receiving a[n] exit letter so that I can bring my complaint to the dc office of human rights. I spoke to a[n] attorney who's asking me about my exit letter and she thought it was odd that I had not yet received one."

74. Ms. Boyd and Cpt. Barnes spoke on the phone following Ms. Boyd's 2:14 p.m. email.

75. During this phone call, Cpt. Barnes told Ms. Boyd that she had not contacted Ms. Boyd previously because Ms. Boyd's case was still under investigation.

76. Ms. Boyd then asked Cpt. Barnes for an EEO exit letter, as she understood her previous communication with Ms. Mauro constituted an EEO complaint.

77. In response, Cpt. Barnes again advised Ms. Boyd that she could not file an EEO complaint until the criminal investigation was over, and once it concluded, DC FEMS would commence an investigation into her claims of harassment.

78. Following this phone call, at 5:36 p.m. on August 6, 2021, the same day, Ms. Boyd emailed Cpt. Barnes again and stated, "Hello you spoke with me earlier on the phone. During our conversation after my initial email informing me I can't file a EEO complaint

until the trial is complete. Which means I can't get a[n] exit letter can you please enlighten

me where in the fire department policy, rules or procedure it says that?"

79. Around two hours later, Cpt. Barnes responded to Ms. Boyd's 5:36 p.m. email stating:

"Firefighter Boyd,

You have active criminal investigation/ proceeding that is currently in the judicial system. The criminal case has not been finalized. You are requesting an EEO Exit Letter. I have questions for you: Who did you file an EEO Complaint with? What date did you file and EEO Complaint? Have you been through the counseling process, if so when? Have you been through mediation, if so when? If you haven't done any of the above, you haven't started the EEO process per the DC Office of Human Rights. If you wish to speak with someone regarding the process, I would encourage you to reach out to an EEO Counselor and or the Agency Diversity Officer, Mr. Ken Hunter. You have a responsibility to inform them that your complaint is a criminal matter that is currently in court. Before you speak to anyone else regarding EEO, I would strongly encourage you to contact the AUSA (prosecutor) that is handling you[r] case and be guided by their advice. This matter reaches beyond the jurisdiction of Departmental policy because of its criminal nature and it has not been adjudicated in court."

80. On August 9, 2021, Ms. Boyd responded to Ms. Barnes' questions stating:

"I was under the impression that my previous officer Lt McMahon was contacting the eeo per his words once I reported the situation to him in April of 2020. He called me back and instructed me to contact Amy Mauro which I did and I was under the impression she was EEO. She then advised me since I had already went to MPD no investigation could take place until the case was over. She never elaborated to me I could file a case through office of human rights or that what I was doing was not filing a EEO complaint. I was instructed to wait which I have been doing. Once I was directed to you because I heard on the job you might could be of help I reached out to you, you called me and told me you haven't reached out to me because the case is still under investigation. I then emailed you asking for a[n] exit letter because I thought Amy Mauro was eeo and thought I would have one. You then called me via phone after I emailed you regarding a exit letter. You then told me I cannot file a EEO complaint until the criminal was over and then you would investigate, then we would try to mediate and if we couldn't mediate then I could can get a[n] exit letter and go to office of human rights after the case was over per your words. You reiterated to me twice i couldn't file a EEO complaint until the criminal case was over and that I had to wait. That's all I've been doing is waiting. I then emailed you discussing what we discussed on the [ ] phone and asking you to tell me where in the policy,

rules or regulations it states I cannot file a eeo complaint until my case was over. I still would like those references please. To answer your question I thought I was filing a EEO complaint with Amy Mauro and I was to wait until the case was over I informed her what took place in April of 2020."

81. In response, on the same day, Cpt. Barnes stated:

"FF Boyd, I'm sorry that you have not be guided in the direction that you currently desire. Let me clarify my role to you. I am an Internal Affairs investigator. My office investigates criminal activities and severe misconduct of employees. If the incident of misconduct is criminal, IA cannot act until the case is concluded in court so there is no interference or obstruction in that case. Criminal cases oftentimes lead to convictions, jail time, fines, all or none of the above. Once the case is finished in court, IA investigates the case administratively for the member to be disciplined within the agency; up to termination. Ms. Mauro is not an EEO counselor for the agency, however she can direct you to one. I'm not sure, but she probably did not do that because your case is criminal and is being handled and tracked by IA. I do not currently recall my office receiving any documentation from Amy Mauro or Lt. McMahon about you wanting to file an EEO case. I'll consult with the agency Diversity Manager to see if he received anything.  Reach out to the AUSA that's prosecuting your case and ask her if you can file an EEO case now and I'll also consult with the agency attorney. In the meantime, feel free to reach back out to Amy Mauro, since she was the person you initially spoke with."

82. On August 10, 2021, the next day, Cpt. Barnes emailed Ms. Boyd stating, "FF Boyd, While this case is going through the legal process, attached are some resources that you may find helpful." The attached document that Ms. Barnes included was the "Mayor's Order on Domestic Abuse and Assault." Cpt. Barnes' email did not include the DC FEMS policy that Ms. Boyd requested, which allegedly supported Cpt. Barnes' and Ms. Mauro's instruction that Ms. Boyd could not file an EEO complaint until her criminal case was over, nor did it include any information about the EEOC process or procedures.

83. On Tuesday, June 27, 2022, Lt. Jordan was found guilty of sex abuse in the criminal court of the D.C. Superior Court stemming from his assault of Ms. Boyd. The execution of the sentence was suspended, the court ordered a $50 fee and that Lt. Jordan be under

supervised probation for 12 months. The court also issued Lt. Jordan a "Stay Away/ No Contact Order."

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

84. Pursuant to Defendant's instructions that Ms. Boyd could pursue an EEO complaint after the criminal proceedings were complete, on Thursday, June 30, 2022, Ms. Boyd communicated with, Chief Nicole Liriano, EEO counselor, to discuss her complaint of sexual harassment.

85. Between July 5, 2022 and July 9, 2022, Chief Liriano and Ms. Boyd coordinated a time to talk about Ms. Boyd's complaint of sexual harassment. On or about July 9 or July 10, 2022, Ms. Boyd called Chief Liriano and the two discussed Ms. Boyd's complaint.

86. On July 25, 2022, Ms. Boyd received an exit letter stating that Ms. Boyd could file a complaint with D.C. Office of Human Rights (DCOHR).

87. On July 28, 2022, just three days after receiving the exit letter, Ms. Boyd filed a discrimination complaint with the D.C. Office of Human rights.

88. On September 9, 2022, Ms. Boyd also filed a charge of discrimination with the EEOC's Washington Field Office.

89. On September 19, 2022, Ms. Boyd received the EEOC's Notice of Right to Sue.

90. All statutory prerequisites for bringing this action have been timely satisfied and fewer than 90 days have passed since the issuance of the Notice of Right to Sue.

## Count I - Harassment Based on Sex in Violation of Title VII of The Civil Rights Act, 42 U.S.C. § 2000e-2(a).

91. Ms. Boyd alleges and incorporates the allegations set forth in the preceding paragraphs as though each and every allegation is fully set forth herein.

92. At all times material to this Complaint, Ms. Boyd was a member of the class of persons protected by federal statutes based on her sex. 42 U.S.C. § 2000e-2(a).

93. Defendants are employers within the meaning of Title VII, as amended, 42 U.S.C. § 2000e(b).

94. Defendants were aware that Ms. Boyd was a member of a protected class.

95. As described in the proceeding paragraphs, Defendants subjected Ms. Boyd to a hostile work environment in the form of unwanted sexual comments, unwanted sexual touching and assault, and the subsequent rumors and inquiries that her coworkers spread regarding the unwanted sexual touching.

96. Lt. Jordan's sexual harassment and assault, detailed in the preceding paragraphs, were based on Ms. Boyd's sex and was unwelcome. Defendant was aware the behavior was unwelcome. These actions were taken against Ms. Boyd in the workplace.

97. The actions taken toward Ms. Boyd were sufficiently severe or pervasive to create an intimidating, hostile, and offensive work environment and alter the terms and conditions of her employment.

98. Defendants were aware of the harassment because Ms. Boyd reported the harassment, and her opposition to the harassment, to Chief Simister, Lt. McMahon, and Ms. Mauro within two days of the harassing incident.  Later, Ms. Boyd reported the harassment to Melanie Barnes.

99. Defendants failed to exercise reasonable care to prevent and correct promptly the harassment.

100.   The harassment culminated in Ms. Boyd's need to use leave to avoid Mr. Jordan, as she was forced to work in the same physical location as Ms. Jordan for over one month.

16

101.    As a result of Defendant's actions, Ms. Boyd suffered significant compensatory and

consequential damages including, mental anguish, lost wages as a result of not working on

night shifts, depression, stress, humiliation, embarrassment, physical ailments, damage to

her professional reputation, loss of enjoyment of life, and attorney's fees and costs.

**Count II- Harassment Based on Sex in Violation of**
**The District of Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq*.**

102.    Ms. Boyd alleges and incorporates the allegations set forth in the preceding paragraphs

as though each and every allegation is fully set forth herein.

103.    At all times material to this Complaint, Ms. Boyd was a member of the class of

persons protected by the D.C. Code based on her sex. District of Columbia Human Rights

Act, D.C. Code §2-1402.11.

104.    Defendants are employers within the meaning of District of Columbia Human Rights

Act, D.C. Code § 2-1401.02(10).

105.    Defendants were aware that Ms. Boyd was a member of a protected class.

106.    As described in the proceeding paragraphs, Defendants subjected Ms. Boyd to a

hostile work environment in the form of unwanted sexual comments, unwanted sexual

touching and assault, and the subsequent rumors and inquiries that her coworkers spread

regarding the unwanted sexual touching.

107.    Lt. Jordan's sexual harassment and assault, detailed in the preceding paragraphs, were

based on Ms. Boyd's sex and were unwelcome.  Defendant was aware the behavior was

unwelcome. These actions were taken against Ms. Boyd in the workplace.

108.    The actions taken toward Ms. Boyd were sufficiently severe or pervasive to create an intimidating, hostile, and offensive work environment and alter the terms and conditions of her employment.

109.    Defendants were aware of the harassment because Ms. Boyd reported the harassment, and her opposition to the harassment, to Chief Simister, Lt. McMahon, and Amy Mauro within two days of the harassing incident.  Later, Ms. Boyd reported the harassment to Melanie Barnes.

110.    Defendants failed to exercise reasonable care to prevent and correct promptly the harassment.

111.    The harassment culminated in Ms. Boyd's need to use leave to avoid Mr. Jordan, as she was forced to work in the same physical location as Ms. Jordan for over one month.

112.    As a result of Defendant's actions, Ms. Boyd suffered significant compensatory and consequential damages including mental anguish, lost wages as result of not working on night shifts, depression, stress, humiliation, embarrassment, physical ailments, damage to her professional reputation, loss of enjoyment of life, and attorney's fees and costs.

### Count III – Retaliation in Violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e et seq.

113.    Ms. Boyd re-alleges and incorporates the allegations set forth in the preceding paragraphs as though each and every allegation is fully set forth herein.

114.    As described in the proceeding paragraphs, Defendants subjected Ms. Boyd to a hostile work environment in the form of offensive comments and explicit sexual touching.

115.    Ms. Boyd engaged in protected activity when she pulled Lt. Jordan's hand out of her bra and sent him a subsequent text message opposing his aforementioned actions.

116.    Ms. Boyd also engaged in protected activity when she reported and expressed opposition to the harassment to Chief Simister, Lt. McMahon, and Amy Mauro, and later reported the harassment to Melanie Barnes.

117.    Defendant was aware of this protected activity.

118.    Defendants retaliated against Ms. Boyd when Amy Mauro and Melanie Barnes incorrectly told Ms. Boyd she could not file an EEO complaint until the criminal investigation of her matter ended, refused to conduct an investigation, and impeded her ability to pursue her EEO complaint.

119.    As a result of Defendant's actions, Ms. Boyd suffered significant compensatory and consequential damages including out of pocket costs, mental anguish, depression, stress, humiliation, embarrassment, physical ailments, damage to her professional reputation, loss of enjoyment of life, and attorney's fees and costs.

**Count IV – Retaliation in Violation of**
**The District of Columbia Human Rights Act, D.C. Code § 2-1402.61 *et seq.***

120.    Ms. Boyd re-alleges and incorporates the allegations set forth in the preceding paragraphs as though each and every allegation is fully set forth herein.

121.    As described in the proceeding paragraphs, Defendants subjected Ms. Boyd to a hostile work environment in the form of offensive comments and explicit sexual touching.

122.    Ms. Boyd engaged in protected activity when she pulled Lt. Jordan's hand out of her bra and sent him a subsequent text message opposing his aforementioned actions.

123.    Ms. Boyd also engaged in protected activity when she reported and expressed opposition to the harassment to Chief Simister, Lt. McMahon, and Amy Mauro, and later reported the harassment to Melanie Barnes.

124.    Defendant was aware of the protected activity.

19

125.    Defendant retaliated against Ms. Boyd when Amy Mauro, Chief of Staff, and Melanie

Barnes, Office of Internal Affairs Investigator, incorrectly told Ms. Boyd she could not

file an EEO complaint until the criminal investigation of her matter ended, refused to

conduct an investigation, and impeded her ability to pursue her complaint.

126.    As a result of Defendant's actions, Ms. Boyd suffered significant compensatory and

consequential damages including out of pocket costs, mental anguish, depression, stress,

humiliation, embarrassment, physical ailments, damage to her professional reputation, loss

of enjoyment of life, and attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Boyd respectfully prays that his Court grant her the following:

A.    Declare that Defendant's acts and practices violate city and federal laws prohibiting

discrimination on the basis of sex and retaliation;

B.    Order Defendants to pay Ms. Boyd for the leave taken as a result of the Defendant's

actions;

C.    Order Defendants to implement anti-discrimination and anti-retaliation measures to

ensure that Defendant's unlawful employment practices are identified and eliminated, anti-

discrimination and anti-retaliation training for Defendants employees and agents, and to provide all

other equitable relief to which Ms. Boyd is entitled;

D.    Award Ms. Boyd compensatory damages for the economic and emotional harms she

experienced as a result of Defendant's actions;

E.    Award all pre-judgment interest allowed by law;

F.    Award Ms. Boyd reasonable attorneys' fees and costs as authorized by Title VII; and

G.      Order Defendant and its officials, agents, employees and successors to not discriminate on the basis of sex and to further order such proactive actions on the part of the employer to ensure such conduct does not occur in the future, relevant EEO procedure is accurately communicated to an employee with an EEO complaint, and to further order injunctive relief that defendant not retaliate against or engage in conduct that adversely affects any person because that person has reported acts of discrimination, harassment or retaliation;

H.      Award any other such relief this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

Dated: December 16, 2022                                   Respectfully submitted,


Shannon C. Leary, Esq.
Bar ID: MD18396

Gary M. Gilbert, Esq.
Bar ID: MD15808

*Attorneys for Plaintiff*
Gilbert Employment Law, P.C.
1100 Wayne Ave, Suite 900
Silver Spring, MD 20910
Tel: (301) 608-0880
Fax: (301) 608-0881
Sleary-efile@gelawyer.com
Gary-efile@gelawyer.com