**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANAJE BOYD, | : |
| | : |
| Plaintiff, | : Civil Action No.: 22-3741 (RC) |
| | : |
| v. | : Re Document No.: 11 |
| | : |
| DISTRICT OF COLUMBIA, | : |
| | : |
| Defendant. | : |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

**I. INTRODUCTION**

Plaintiff Anaje Boyd brings the instant suit against the District of Columbia ("Defendant" or "the District"), alleging claims of hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2–1401.01, *et seq.* *See* Am. Compl., ECF No. 4. The District now moves to dismiss Boyd's retaliation claims, arguing that she failed to administratively exhaust her Title VII claim and that she has failed to state a claim upon which relief may be granted under either Title VII or the DCHRA.[1] *See* Def.'s Mem. P&A Supp. Mot. Dismiss Am. Compl. ("Def.'s Mot."), ECF No. 11-1. For the reasons discussed below, the District's motion is granted in part and denied in part.

---

[1] The District initially moved to dismiss Boyd's hostile work environment claims as well. *See* Def.'s Mot. at 4–6. The District has since "withdraw[n]" this aspect of its motion and asserts that "[d]iscovery is needed to resolve th[e] issue" of whether Boyd "timely exhaust[ed] her administrative remedies" in relation to those claims. Def.'s Reply Pl.'s Opp'n Mot. Dismiss Am. Compl. at 1, ECF No. 15. The Court will therefore deny the District's motion insofar as the motion seeks dismissal of Boyd's Title VII and DCHRA hostile work environment claims based on any argument that these claims were not timely presented administratively.

## II.  BACKGROUND

The events giving rise to Boyd's complaint began in April of 2020.  At that time, Boyd was working as "a firefighter and an emergency medical technician" for the District of Columbia Fire and Emergency Medical Services ("DC FEMS")—a position she had held since 2011.  Am. Compl. ¶¶ 1–2.  Boyd alleges that, on the night of April 25, she awoke during her shift to find her supervisor, Lt. Antwan Jordan, "standing over her." *Id.* ¶¶ 2, 31.  Lt. Jordan told Boyd that "she had just been relieved of duty and that her Officer in Charge . . . was looking for her . . . . with [her] sexy ass." *Id.* ¶ 32.  Lt. Jordan then left the room, but he returned shortly thereafter to ask whether Boyd had "left anything on the ambulance." *Id.* ¶ 33.  When she replied that she had "left her go-bag," he responded, "so you didn't leave this?" *Id.* ¶¶ 33–34.  As he said this, he "forcibly put his hand down [Boyd's] shirt into her bra and squeezed her right breast." *Id.* ¶ 34.  Boyd "grabbed his hand and tried to remove it from her breast but" to no avail. *Id.*  Instead, Lt. Jordan "attempted to grab her left breast" as well, before leaving the room for a second time. *Id.*  "[S]haken by the assault," Boyd then left the fire station. *Id.* ¶ 35.  After she had left, she "felt something in her bra," which turned out to be "two twenty-dollar bills." *Id.* ¶ 36.

The next day, Boyd reported the incident to Lt. Martin McMahon, her "general supervisor." *Id.* ¶ 38.  Specifically, she told Lt. McMahon that Lt. Jordan had "sexually harassed her" and that "she wished to file an [Equal Employment Opportunity ("EEO")] complaint." *Id.*  Lt. McMahon assured Boyd "that he was going to contact the EEO Office." *Id.* ¶ 39.

On April 27, Boyd "filed a police report against Lt. Jordan with the Metropolitan Police Department." *Id.* ¶ 40.  That same day, she heard back from Lt. McMahon, who told Boyd that he had "attempted to contact the EEO office" but had been "instructed by Chief . . . Simister to

contact Amy Mauro." *Id.* ¶ 41.  Lt. McMahon advised Boyd to reach out to Mauro, but it is not clear whether Lt. McMahon also did so himself.  *See id.* ¶ 43.  Lt. McMahon also explained that Mauro "was the Acting EEO officer" because the "previous Acting EEO officer had resigned."  *Id.* ¶¶ 42–43.

Acting in accordance with Lt. McMahon's "instructions," Boyd sent an email to Mauro. *Id.* ¶ 44.  Thereafter, the two had a conversation about Boyd's "complaint of sexual harassment and assault."  *Id.* ¶ 45.  Boyd also told Mauro that she had filed a police report, to which Mauro responded with apparent "irrit[ation]" based on her "aggressive and curt" tone.  *Id.*  According to Boyd, throughout their conversation, Mauro did not inform Boyd that she was not, in fact, an EEO counselor.  *Id.* ¶ 46.  Nor did she "notify . . . Boyd of any other process or procedure for reporting harassment."  *Id.* ¶ 47.  Instead, Mauro "affirmatively misled and improperly advised . . . Boyd that she could not pursue an EEO complaint" because she had already filed a police report.  *Id.* ¶¶ 48–49.  According to Mauro, this meant that Boyd needed to "wait" to file an EEO charge and "that there could not be an investigation into her harassment complaint while the criminal process was ongoing."  *Id.* ¶ 49.  Taking Mauro at her word, Boyd "did not pursue a complaint of harassment at the time."  *Id.* ¶ 50.

Over a year passed.  Then, in July of 2021, Boyd had a discussion with one of her coworkers, who suggested that Boyd speak with Cpt. Melonie Barnes, an "Investigator in the Office of Internal Affairs."  *Id.* ¶ 67.  Boyd reached out to Cpt. Barnes, who assured Boyd that she would "look into the status" of Boyd's complaint of harassment.  *Id.* ¶¶ 68–70.  Over the course of that month, Boyd and Cpt. Barnes exchanged a few text messages regarding the status of Lt. Jordan's criminal proceedings.  *Id.* ¶¶ 73–74.  Then, in early August, Boyd emailed Cpt. Barnes to request an "exit letter" so that she could "bring [her] complaint to the [DC] [O]ffice of

3

[H]uman [R]ights." *Id.* ¶ 76. During a subsequent phone call, Cpt. Barnes told Boyd that "she had not contacted . . . Boyd previously because . . . Boyd's case was still under investigation." *Id.* ¶ 78. She also told Boyd that Boyd "could not file an EEO complaint until the criminal investigation was over, and once it concluded, DC FEMS would commence an investigation into her claims of harassment." *Id.* ¶ 80.

Following their conversation, Boyd sent Cpt. Barnes an email asking Cpt. Barnes to explain "where in the fire department policy, rules or procedure[s]" it stated that Boyd could not file an "EEO complaint until the [criminal] trial is complete." *Id.* ¶ 81. Cpt. Barnes responded with an email explaining that, unless Boyd had already filed an EEO complaint and "been through the counseling process" and "mediation," she had not "started the EEO process per the DC Office of Human Rights." *Id.* ¶ 82. Boyd replied, in relevant part, that she had been "under the impression" that she had filed an EEO complaint when she spoke to Mauro in April of 2020. *Id.* ¶ 83. Boyd also explained that she had not taken further action following her conversation with Mauro because Mauro had advised her that "no investigation could take place until the [criminal] case was over." *Id.* Cpt. Barnes responded by informing Boyd that she was not aware of "any documentation from . . . Mauro or Lt. McMahon" stating that Boyd "want[ed] to file an EEO case." *See id.* ¶ 84. She also told Boyd that she should "[r]each out to the [Assistant U.S. Attorney] that's prosecuting your case and ask her if you can file an EEO case now." *Id.* And, although Cpt. Barnes later followed up with resources Boyd "may find helpful" while the criminal case was proceeding, Cpt. Barnes never provided information regarding "the DC FEMS policy that . . . allegedly [explained why] Boyd could not file an EEO complaint until her criminal case was over." *Id.* ¶ 85.

4

Almost a year later, on June 27, 2022, Lt. Jordan was convicted of sexually abusing Boyd. *Id.* ¶ 86. Three days later, Boyd contacted an EEO counselor "to discuss her complaint of sexual harassment." *Id.* ¶ 87. On July 25, "Boyd received an exit letter stating that [she] could file a complaint with [the] D.C. Office of Human Rights." *Id.* ¶ 89. Three days after receiving her exit letter, "Boyd filed a discrimination complaint with the D.C. Office of Human Rights." *Id.* ¶ 90. And on September 9, Boyd "filed a charge of discrimination" with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 91. Ten days later, the EEOC sent Boyd a "Notice of Right to Sue." *Id.* ¶ 92.

Following her receipt of the EEOC's Notice, Boyd filed a complaint in this court, *see* Compl., ECF No. 1, which she later amended, *see* Am. Compl. Boyd's amended complaint alleges four counts of sexual harassment and retaliation under Title VII, 42 U.S.C. § 2000e, *et seq.*, and the DCHRA, D.C. Code § 2–1401.01, *et seq. See* Am. Compl. ¶¶ 94–129. The District moved to dismiss Boyd's amended complaint, *see* Def.'s Mot., and the motion is now ripe for consideration, *see* Mem. Supp. Pl.'s Opp'n Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 13-1, Def.'s Reply Pl.'s Opp'n Mot. Dismiss Am. Compl. ("Def.'s Reply"), ECF No. 15.

### III.  LEGAL STANDARD

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim" to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint" under that standard; it asks whether the plaintiff has properly stated a claim. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555. However, a court considering a motion to dismiss presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

"In deciding a 12(b)(6) motion, a court may 'consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice.'" *Greer v. Bd. of Trs. of the Univ. of the D.C.*, 113 F. Supp. 3d 297, 304 (D.D.C. 2015) (citation omitted) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)). "When the plaintiff alleges the filing of an administrative charge, that charge may be deemed incorporated into the complaint and the court can consider it on a motion to dismiss." *Id.*; *see also Koch v. Walter*, 935 F. Supp. 2d 164, 171 (D.D.C. 2013).

## IV.  ANALYSIS

The District moves to dismiss Boyd's retaliation claims on two grounds. First, it argues that Boyd failed to exhaust her administrative remedies in relation to her claim of retaliation and that, therefore, her Title VII retaliation claim must be dismissed. *See* Def.'s Mot. at 6. Second,

the District argues that Boyd has not set forth a *prima facie* retaliation claim under either Title VII or the DCHRA.  *See id.* at 6–7.

### A.  Exhaustion of Title VII Retaliation Claim

The District first argues that Boyd's Title VII retaliation claim should be dismissed for failure to exhaust administrative remedies because Boyd did not assert a retaliation claim in the charge of discrimination that she filed with the EEOC.  *Id.* at 6.  The Court agrees.

Among other things, Title VII "prohibit[s] employers from retaliating against employees for having engaged in activity protected by Title VII."  *Rochon v. Gonzales*, 438 F.3d 1211, 1217 (D.C. Cir. 2006); *see* 42 U.S.C. § 2000e–3(a).  Before filing a lawsuit alleging retaliation in violation of Title VII, "a plaintiff must exhaust her administrative remedies."  *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526 (D.C. Cir. 2019).[2]  This means that a plaintiff must "'fil[e] an administrative charge with the EEOC and allow[] the agency time to act on the charge' before commencing litigation."  *Id.* (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)).  The ensuing litigation is then limited in scope "to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations."  *Ahuja v. Detica Inc.*, 873 F. Supp. 2d 221, 227 (D.D.C. 2012) (quoting *Park*, 71 F.3d at 907).  "For a charge to be regarded as 'reasonably related' to a filed charge it must at a minimum arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination."  *Haynes*, 924 F.3d at 526–27 (cleaned up) (quoting *Payne v. Salazar*, 619 F.3d

---

[2] Failure to exhaust "is a non-jurisdictional affirmative defense."  *Ahuja v. Detica Inc.*, 873 F. Supp. 2d 221, 227 (D.D.C. 2012); *see Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011).  As such, the defendant "bears the burden of proving by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies."  *Wade v. District of Columbia*, 780 F. Supp. 2d 1, 11 (D.D.C. 2011); *see Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).

56, 65 (D.C. Cir. 2010)). This ensures that the charge of discrimination "contain[s] 'sufficient information' to put the agency on notice of the claim and to 'enable the agency to investigate' it" before an employee files a federal lawsuit. *Crawford v. Duke*, 867 F.3d 103, 109 (D.C. Cir. 2017) (quoting *Artis v. Bernanke*, 630 F.3d 1031, 1034 (D.C. Cir. 2011)). The D.C. Circuit has instructed that "the administrative charge requirement should not be construed to place a heavy technical burden" on plaintiffs, *see Park*, 71 F.3d at 907, and that EEOC complaints should be liberally construed, *Crawford*, 867 F.3d at 108. All the same, "[a] court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." *Park*, 71 F.3d at 907.

Even liberally construed, Boyd's EEOC complaint would not have put either the EEOC or her employer on notice that Boyd was asserting a retaliation claim. The reasons for this are twofold. First, the form that Boyd filed with the EEOC—which outlined and described her formal charge of discrimination—contained a list of checkable boxes from which Boyd was asked to identify the discriminatory acts on which her complaint was based. *See* Pl.'s Opp'n, Ex. 1, Pl.'s Charge of Discrimination ("EEOC Charge") at 4, ECF No. 13-3.[3] Boyd checked boxes to indicate that she had been discriminated against on the basis of sex and that she had suffered sexual harassment. *See id.* She did not check the box for "retaliation." *See id.*; *see also Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 279 (D.D.C. 2011) ("Discrimination and retaliation claims are considered distinct types of claims that must be raised independently if the retaliation occurred prior to the filing of the administrative charge.").

---

[3] "As the Court relies only on the pleadings and [Boyd's] administrative complaint to resolve issues relating to non[-]jurisdictional exhaustion under Title VII . . . , it analyzes that issue under Rule 12(b)(6), not as a motion for summary judgment under Rule 56." *Koch*, 935 F. Supp. 2d at 171; *see also Greer*, 113 F. Supp. 3d at 304.

Boyd's failure to check the "retaliation" box is not, by itself, fatal to her contention that she administratively exhausted that claim. *See Latson v. Holder*, 82 F. Supp. 3d 377, 385 (D.D.C. 2015) (explaining that failure to check correct box is "not dispositive"). After all, while the checkable boxes are meant to "aid a claimant in identifying the nature of her charge, a claimant is not necessarily limited to the boxes she selected if she provides the basis for her claim in her written explanation." *Robinson-Reeder v. Am. Council on Educ.*, 532 F. Supp. 2d 6, 13 (D.D.C. 2008). It is only where a plaintiff has "neither checked the correct box nor given some sort of notice of the substance of [her] claims in the body of the charge that courts will dismiss for failure to adequately exhaust administrative remedies." *Greer*, 113 F. Supp. 3d at 307 n.9

Here, Boyd's failure to check the "retaliation" box is not saved by her written explanation because that explanation provides no indication that she was pursuing a retaliation claim. For one thing, her written explanation does not mention retaliation at all. *See Jones v. Ass'n of Am. Med. Colls.*, No. 22-CV-1680, 2023 WL 2327901, at *6 (D.D.C. Mar. 2, 2023) (dismissing retaliation claim where plaintiff's administrative complaint did not use the words "retaliation" or "retaliatory"); *Ahuja*, 873 F. Supp. 2d at 227 (D.D.C. 2012) (holding that plaintiff failed to exhaust retaliation claim where her EEOC charge was "devoid of any reference to retaliation"). Instead, it details the facts of Lt. Jordan's alleged sexual abuse and harassment, and then describes the reasons why Boyd did not file a formal charge of discrimination for over two years. *See* EEOC Charge at 4–5. Although Boyd's written narrative does mention that Mauro and Cpt. Barnes instructed her that she could not file an EEO complaint until the criminal proceedings against Lt. Jordan had concluded, *see* EEOC Charge at 5; *see also* Pl.'s Opp'n at 9 (arguing that the inclusion of these facts satisfies the exhaustion requirement), there is nothing in that narrative

9

that suggests—in any way—that Boyd viewed Mauro's or Cpt. Barnes's instructions to be retaliatory, *see Robinson-Reeder*, 532 F. Supp. 2d at 13 (dismissing claim of retaliation where plaintiff's "EEOC charge fail[ed] to provide the slightest hint that plaintiff may have viewed the [challenged action] as a retaliatory act"); *Jones*, 2023 WL 2327901, at *6 (similar). Rather, Boyd's description of Mauro's and Cpt. Barnes's acts is best (and most reasonably) understood as providing support for why she delayed in filing her formal discrimination complaint. That being so—and given the absence of any other factual allegations that suggest Boyd was describing a retaliation claim—the Court cannot conclude that Boyd's complaint would have "reasonably give[n] rise to an investigation" into retaliation (as opposed to an investigation solely focused on sex discrimination and sexual harassment). *See Ortiz-Diaz v. U.S. Dep't of Hous. & Urb. Dev.*, 961 F. Supp. 2d 104, 112 (D.D.C. 2013).

Because Boyd's charge of discrimination did not contain "sufficient information" to put either the EEOC or her employer "on notice of [a retaliation] claim," she has failed to exhaust her administrative remedies with regard to that claim. *Crawford*, 867 F.3d at 109. Her Title VII retaliation claim must, therefore, be dismissed.

**B. Failure to State a *Prima Facie* Retaliation Claim Under Title VII or the DCHRA**

The District separately contends that, even if Boyd administratively exhausted her Title VII retaliation claim, she has failed to state a *prima facie* case of retaliation under either Title VII or the DCHRA. The District argues that (1) Boyd did not suffer a materially adverse action sufficient to give rise to a retaliation claim and, (2) even if she did, she has failed to allege that her employer engaged in the challenged actions *because of* her protected conduct. *See* Def.'s Mot. at 6–7. The Court will address the District's contentions in turn.

1. Materially Adverse Action

"To state a claim for retaliation under Title VII or the DCHRA, a plaintiff 'must establish three elements: (1) that she made a charge or opposed an unlawful practice, (2) that the employer took a materially adverse action against her, and (3) that the employer took the action because of her protected conduct.'"[4]  *Jenkins v. District of Columbia*, No. 17-CV-2730, 2023 WL 4183795, at *5 (D.D.C. June 26, 2023) (cleaned up) (quoting *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015)).  In the retaliation context, an action is materially adverse if it "could conceivably dissuade a reasonable worker from making or supporting a charge of discrimination."  *Newton v. Off. of the Architect of the Capitol*, 839 F. Supp. 2d 112, 116 (D.D.C. 2012); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Siddique v. Macy's*, 923 F. Supp. 2d 97, 107 n.10 (D.D.C. 2013) (explaining that the "materially adverse" standard set forth in *Burlington Northern* applies to claims of retaliation under the DCHRA).  This standard casts a wider net than does the standard governing materially adverse actions in the discrimination context and, as such, "the universe of cognizable retaliatory actions is broader than that of discriminatory actions."  *Swann v. Off. of Architect of Capitol*, 73 F. Supp. 3d 20, 26–27 (D.D.C. 2014).  That said, the universe "is not so broad as to allow the federal judiciary to sanction trivial harms or micromanage a supervisor's decisions."  *Kelso v. McDonough*, No. 19-CV-0722, 2021 WL 3856614, at *8 (D.D.C. Aug. 30, 2021).

---

[4] Title VII and the DCHRA are sufficiently similar such that courts generally interpret them consistently with one another.  *See Jenkins v. District of Columbia*, No. 17-CV-2730, 2023 WL 4183795, at *5 (D.D.C. June 26, 2023); *see also Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 296 (D.C. Cir. 2015) (explaining that plaintiff's Title VII and DCHRA claims "rise and fall together").

Boyd's amended complaint alleges two distinct ways in which her employer purportedly retaliated against her for engaging in protected activity.[5] Specifically, she claims that DC FEMS retaliated against her (1) when Mauro and Cpt. Barnes "incorrectly told . . . Boyd she could not file an EEO complaint until the criminal investigation . . . ended," and (2) when those same individuals "refused to conduct an investigation" into Boyd's claims of harassment. Am. Compl. ¶¶ 121, 128. The upshot, according to Boyd, is that DC FEMS "impeded her ability to pursue her EEO complaint." *Id.*

Taking these allegations in order and viewing the well-pleaded facts in the light most favorable to Boyd, the Court has no trouble concluding that Mauro's and Cpt. Barnes's instructions to Boyd could constitute materially adverse employment actions. After all, through those instructions, Mauro and Cpt. Barnes actively "dissuaded and discouraged [Boyd] from filing an EEO complaint." *Trant v. Murray*, 589 F. Supp. 3d 50, 58 (D.D.C. 2022) (finding that employer's attempts to "dissuade[] and discourage[] [plaintiff] from filing an EEO complaint" could "qualif[y] as a materially adverse action"). The District does not meaningfully contend otherwise, asserting only that Boyd must not have been dissuaded because she "is [now] pursuing her EEO claims." Def.'s Reply at 4. Of course, this ignores the fact that, based in large part on the instructions given by Mauro and Cpt. Barnes, Boyd delayed filing an EEO complaint for over two years. *See* Am. Compl. ¶¶ 44, 87, 91. But more to the point, the District "confuses

---

[5] Boyd's amended complaint alleges that she "engaged in protected activity when she pulled Lt. Jordan's hand out of her bra and sent him a subsequent text message opposing" that act, and also "when she reported and expressed opposition to the harassment to Chief Simister, Lt. McMahon, . . . Mauro, and . . . [Cpt.] Barnes." Am. Compl. ¶¶ 118–19, 125–26. The District does not seem to dispute that these acts constituted protected activity. *See* Def.'s Mot. at 6–7; *see also Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006) (explaining that an informal complaint may constitute protected activity provided that "the complaint . . . in some way allege[s] unlawful discrimination, not just frustrated ambition").

the objective standard for a materially adverse action—a 'reasonable worker' would be dissuaded from pursuing their discrimination claim—with a subjective standard that the plaintiff herself be deterred." *Bell v. Fudge*, No. 20-CV-2209, 2022 WL 4534603, at *7 (D.D.C. Sept. 28, 2022). In other words, whether Boyd herself was deterred from filing a charge of discrimination is immaterial, at least at the motion-to-dismiss stage. *See id.* Instead, the Court finds that the instructions provided by Mauro and Cpt. Barnes—the former of whom Boyd could reasonably have believed was an EEO coordinator with specialized insight on the subject, *see* Am. Compl. ¶¶ 19, 42, 46—could well have dissuaded a reasonable employee from filing a charge of discrimination with the EEOC and that, therefore, the giving of those instructions may qualify as a materially adverse employment action.

In contrast, Mauro's and Cpt. Barnes's alleged "refus[al] to conduct an investigation," *id.* ¶¶ 121, 128, into Boyd's claim of sexual harassment is not an adverse action sufficient to support a retaliation claim.[6] Other courts have held that, for a failure to investigate to constitute a materially adverse action, a plaintiff must explain how that failure led to "demonstrable harm" or "made it more difficult for her to pursue her claims with the EEOC or otherwise assert her rights." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 640–41 (10th Cir. 2012); *see also*

---

[6] Although Boyd's amended complaint contains facts that would seem to hint at a nascent retaliatory failure-to-remediate claim, *see* Am. Compl. ¶¶ 55–59 (stating Boyd's belief that Lt. Jordan was permitted to continue working for the month following her report of sexual harassment, though not alleging that she ever interacted with Lt. Jordan during this period), Boyd does not expressly seek relief on those grounds, *see id.* ¶¶ 116–29 (setting forth the discrete actions on which Boyd bases her retaliation claims). Similarly, her opposition brief does not argue that DC FEMS's decision to allow Lt. Jordan to continue working constituted a materially adverse action. *See* Pl.'s Opp'n at 13–16; *see also Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C. Cir. 2011) (explaining that "a claim of discriminatory or retaliatory failure to remediate may be sufficient if the uncorrected action would (if it were discriminatory or retaliatory) be of enough significance to qualify as an adverse action (under the relevant standard)"). Accordingly, the Court does not construe Boyd's amended complaint as stating a claim for retaliatory failure-to-remediate.

*Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (explaining that "at least in a run-of-the-mine case . . . , an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint"). The allegations in Boyd's complaint do not satisfy that standard. For one, Boyd does not identify any demonstrable harm flowing from her supervisors' failure to investigate. For another, the facts alleged in Boyd's complaint do not suggest that the failure to investigate made it more difficult for Boyd to pursue her EEOC claims. To the contrary, Boyd's amended complaint suggests that it was the misleading instructions that Boyd received from Mauro and Cpt. Barnes *alone* that made it more difficult for her to pursue an EEOC charge. For example, Boyd alleges that, "[p]ursuant to Defendant's instructions," Boyd contacted an EEO counselor almost immediately after Lt. Jordan's criminal proceedings concluded. Am. Compl. ¶ 87. This suggests that Boyd did not view the completion (or even the instigation) of an internal investigation into her claims as a prerequisite to filing an EEOC charge. And more fundamentally, neither Boyd's amended complaint nor her opposition to the District's motion to dismiss argue or imply that DC FEMS's alleged failure to investigate would have dissuaded a reasonable employee from making or supporting a charge of discrimination. *See, e.g.*, Pl.'s Opp'n at 15 (focusing only on the "instruction[s]" given by Mauro and Cpt. Barnes).

     In sum, the Court concludes that Boyd has plausibly alleged that she suffered a materially adverse action when Mauro and Cpt. Barnes informed her that she could not file an EEO complaint while criminal proceedings against Lt. Jordan were pending. Conversely, Mauro's and Cpt. Barnes's alleged failure to investigate Boyd's harassment claims does not constitute a materially adverse action sufficient to give rise to a claim of retaliation.

2. Causation

Although Boyd has plausibly alleged that the instructions she received from Mauro and Cpt. Barnes regarding when she could file an EEO complaint constituted an adverse action, she has not plausibly alleged a causal link between those instructions and protected activity. In other words, Boyd has not alleged facts sufficient to create a plausible inference that Mauro and Cpt. Barnes gave those instructions *because* Boyd had engaged in protected activity.

Both Title VII and the DCHRA require a plaintiff to demonstrate "a causal link between the [plaintiff's] protected activity and the adverse employment action[s]" she suffered. *Slate v. Pub. Def. Serv. for D.C.*, 31 F. Supp. 3d 277, 292 (D.D.C. 2014). In the context of Title VII, this element requires proof that a "desire to retaliate was [a] but-for cause of the challenged employment action." *Jones v. D.C. Water & Sewer Auth.*, No. 12-CV-1454, 2016 WL 659666, at *6 (D.D.C. Feb. 18, 2016) (emphasis deleted) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)). That is, a "plaintiff must show 'that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Nunnally v. District of Columbia*, 243 F. Supp. 3d 55, 67 (D.D.C. 2017) (quoting *Nassar*, 570 U.S. at 360). As for the DCHRA, it is not immediately clear whether a plaintiff is required to prove but-for causation or if, instead, she need only show that a desire to retaliate was a "motivating factor" behind the challenged action. *See Mosleh v. Howard Univ.*, No. 19-CV-00339, 2020 WL 956527, at *7 (D.D.C. Feb. 27, 2020) (noting divergence in the DCHRA caselaw between but-for and motivating-factor causation tests); *compare Jones*, 2016 WL 659666, at *7 ("To date, D.C. courts have not required 'but for' causation, but instead have used a standard comparable to the 'motivating factor' test."), *with Nunnally*, 243 F. Supp. 3d at 67 (applying "but-for" test).

Regardless of which standard applies, however, Boyd cannot meet it. That is because Boyd's complaint contains no factual allegations that would give rise to a reasonable inference that either Mauro or Cpt. Barnes were motivated by retaliatory animus. The closest Boyd gets to alleging that *either* Mauro or Cpt. Barnes harbored such animus is when she alleges that Mauro "appeared irritated" to learn that Boyd had filed a police report against Lt. Jordan. *See* Am. Compl. ¶ 45. In support of that allegation, Boyd states that Mauro's "tone" was "aggressive and curt." *Id.* But the fact that Mauro responded "curt[ly]" to Boyd's outreach, *id.*, does not give rise to an inference that Mauro was motivated to retaliate against Boyd such that she would then knowingly and intentionally provide Boyd with allegedly false information regarding when department policy allowed Boyd to file a discrimination complaint. *Cf. Barry v. U.S. Capitol Guide Bd.*, 636 F. Supp. 2d 95, 107 (D.D.C. 2009) (explaining that plaintiff must provide more than mere "speculation" that defendant "harbored retaliatory animus against the plaintiff"). And to the extent that Boyd's amended complaint relies on the allegation that Mauro and Cpt. Barnes were "aware of the protected activity" in which Boyd engaged, *see* Am. Compl., ¶¶ 120, 127, such awareness—without more—is insufficient to create a plausible inference of causation. *See, e.g.*, *Farrington v. Mayorkas*, No. 21-CV-3240, 2022 WL 16834018, at *3 (D.D.C. Nov. 9, 2022) ("[A] plaintiff must state allegations beyond the employer's mere knowledge of a protected activity."); *Brown v. Mills*, 674 F. Supp. 2d 182, 197 n.8 (D.D.C. 2009) ("[M]ere knowledge of . . . protected acts is not sufficient to allow a jury to infer that [the] acts were motivated by retaliation."). Because Boyd has failed to plausibly allege that retaliatory animus motivated Mauro or Cpt. Barnes to mislead her, her retaliation claims must be dismissed.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 11) is **GRANTED IN PART AND DENIED IN PART**. Specifically, Defendant's motion is **GRANTED** to the extent that it seeks dismissal of Plaintiff's retaliation claims. The motion is **DENIED** to the extent that it seeks dismissal of Plaintiff's hostile work environment claims. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: January 29, 2024

RUDOLPH CONTRERAS
United States District Judge